1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

| | |
|---|---|
| EDWARD WESTERMAN, | Case No.  24-cv-04118-JCS |
| Plaintiff, | **ORDER RE:** |
| v. | **1) MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| FTI CONSULTING, INC., et al., | |
| Defendants. | **2) MOTION FOR LIMITED EXPEDITED DISCOVERY** |
| | Re: Dkt. Nos. 10, 34 |

7
8
9
10
11
12
13

United States District Court
Northern District of California

## I.    INTRODUCTION

This case involves a dispute about the enforceability of non-compete provisions in an employment contract between Defendants FTI Consulting, Inc. and FTI Consulting LLC (collectively, "FTI")[1] and a former FTI employee, Plaintiff Edward Westerman. Presently before the Court is FTI's Motion to Dismiss Plaintiff's Complaint (dkt. no. 10) ("Motion to Dismiss"), in which FTI asserts that this case should be dismissed for lack of personal jurisdiction and improper venue. Also pending are Plaintiff's Motion for a Preliminary Injunction (dkt. no. 22) ("Preliminary Injunction Motion") and FTI's Motion for Limited Expedited Discovery (dkt. no. 34) ("Discovery Motion").  A hearing on the Motion to Dismiss and the Discovery Motion was held on September 25, 2024. The Court addresses only those motions in this Order.  For the reasons set forth below, the Court DENIES the Motion to Dismiss and GRANTS in part and DENIES in part the Discovery Motion.[2]

---

[1] At the September 25, 2024 hearing, the parties stipulated that for the purposes of the instant motions the Court need not differentiate between the two entities.

[2] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

## II.    BACKGROUND

### A.    Factual Background

FTI Consulting, Inc., is a global business advisory firm that is incorporated in Maryland. Declaration of Curtis Lu in Support of Defendants FTI Consulting, Inc. and FTI LLC's Motion to Dismiss Plaintiff's Complaint, dkt. no. 10-1 ("Lu Decl."), ¶ 2. FTI Consulting, Inc. has its principal office in Bowie, Maryland, and headquarters in Washington, D.C. *Id.* FTI Consulting LLC is a wholly-owned subsidiary of FTI Consulting, Inc., organized under the laws of Maryland and with its headquarters in Washington, D.C. *Id.* ¶ 3. According to FTI's general counsel, Curtis Lu, FTI's business operations are directed from its principal office in Maryland or its corporate headquarters in Washington, D.C. and its senior executive corporate officers are based in Washington, D.C.  *Id.*   ¶ 5. FTI has domestic offices in twenty-one states and the District of Columbia, as well as international offices throughout the world.  *Id.* ¶ 6. It has eight physical offices in California, which is at least twice the number of offices it maintains in any other state. Declaration Of Ashley Kemper Corkery in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss ("Corkery Decl.") ¶ 2. FTI's website indicates that it employs numerous people in California, including 35 people in its San Francisco office. *Id.*  ¶ 3.

Westerman was employed by FTI as a senior managing director in its San Francisco office from March 2011 to February 29, 2024.  Declaration of Edward Westerman in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss, dkt. no. 33-1 ("Westerman Opposition Decl.") ¶¶ 9, 11, 13.  Previously, he had been employed by another consulting firm, LECG, and worked out of LECG's San Francisco office from 2004 to 2011.  *Id.*  ¶ 8.  Before that, Westerman was a partner at Deloitte from 1999-2004, also working out of Deloitte's San Francisco office. *Id.* ¶ 7.   Westerman became an FTI employee when his practice group at LECG was bought and absorbed by FTI.  *Id.*  ¶ 9.  According to Westerman, at all times during his employment with FTI, he was affiliated with FTI's San Francisco, California office, where he had a physical office, and that affiliation was reflected on FTI's website, Westerman's business cards, and in his email signature block. *Id.*  ¶¶ 11-13. He also states that when he commenced his employment with FTI in 2011, he signed an employment agreement providing that he would work out of FTI's San

Francisco office.  *Id.* ¶ 12.  Westerman lived in San Francisco, California from June 1996 to September 2016, when he moved his primary residence to Wyoming.  *Id.* ¶¶ 6, 17.  After he moved to Wyoming, Westerman continued to be affiliated with FTI's San Francisco office and regularly travelled to San Francisco to perform work out of that office.  *Id.*  ¶ 17.

According to Westerman, FTI hired him "in part due to [his] extensive professional network in California and [his] years of experience working on California-specific matters."  *Id.* ¶ 10. He estimates that for the duration of his employment with FTI, "approximately 75% of [his] work was with California-based FTI clients[ ]" and states that "the client engagement teams [he] managed were largely based in California and Oregon, although [he] also managed some employees in other locations such as Chicago and Hong Kong."  *Id.*  ¶¶ 14-15.

FTI's general counsel reviewed Westerman's billing records from October 5, 2020 to February 25, 2024, and found that Westerman "logged eighty-one percent of his overall hours for FTI outside of California" and that "the vast majority" of this time was for work performed in Wyoming.  Lu Decl. ¶ 11. Westerman also logged the number of days each year that he performed work while physically in California for tax purposes and states that he worked in California 84 days in 2020, 56 days in 2021, 76 days in 2022 and 59 days in 2023.  Westerman Opposition Decl. ¶ 27. He further states that he "never performed any work that created any tax obligation in D.C." and that "[d]uring the last few years of [his] employment with FTI, [he] was in Washington, D.C. for a total of less than five days."  *Id.* ¶¶ 18, 27.

Westerman signed a new employment agreement with FTI on October 21, 2019.  *Id.*  ¶ 19; Lu Decl., Ex. B ("2019 Employment Agreement").  Section 12 of the 2019 Employment Agreement contains a set of non-competitions covenants, including a prohibition on employment in a similar capacity by a competing company for one year after the date of termination (the "restricted period").  Lu Decl., Ex. B (2019 Employment Agreement) §§ 12, 17(a) & (b).   Section 13 of the 2019 Employment Agreement prohibits solicitation of business regarding any case the employee worked on while at FTI, including solicitation of FTI clients or employees, during the same restricted period.  *Id.* § 13.  The parties also agreed that violations of Sections 12 and 13 would result in the imposition of liquidated damages and established guidelines for determining

3

1    the amount of liquidated damages, depending on the specific violation. *Id.* § 19.

2         In its 2023 annual report filed with the Securities and Exchange Commission, FTI

3    recognized that "[w]hile [its] written employment agreements with [its] Senior Managing

4    Directors and equivalent employees may include non-competition and non-solicitation clauses,

5    such clauses may offer us only limited or no protections and may be unenforceable in one or more

6    jurisdictions."  Corkery Decl., Ex. A ("2023 Annual Report") at 23.  In that report, FTI

7    specifically recognized that "[i]n certain jurisdictions, non-competition clauses have been

8    abolished or banned" and noted that "[s]tarting January 1, 2024, California adopted legislation that

9    expanded that state's existing restrictions on non-competes to agreements created out-of-state and

10   created new enforcement rights for employees to challenge such clauses."  *Id.*

11        The 2019 Employment Agreement specifies that Maryland law controls the interpretation

12   and enforcement of that agreement.  *Id.* § 24.  And like Westerman's previous employment

13   agreement, the 2019 Employment Agreement lists Westerman's "office location" as "San

14   Francisco, California."  Lu Decl., Ex. B at ECF p. 35.  Westerman negotiated the agreement with

15   his supervisor of the time, Paul Ficca, who lived in Washington state and worked out of FTI's

16   Seattle office.  Westerman Opposition Decl. ¶¶ 21-22.  Westerman traveled from San Francisco to

17   Jackson, Wyoming on the day he signed the agreement and signed it either before he left San

18   Francisco or after he landed in Jackson that day.  *Id.* ¶ 20.

19        According to Lu, in April 2021, Westerman "requested that his state jurisdiction for

20   income tax reporting purposes be changed retroactively from California to Wyoming, where he

21   had been living and working since 2016."  *Id.*  ¶ 10 & Ex. A.  The email exchange between

22   Westerman and FTI indicates that he sought to change his tax jurisdiction retroactive to 2020.  Lu

23   Decl., Ex. A at ECF p. 10.  FTI's Senior HR Business Partner, Marilyn Israel, responded as

24   follows:

25              To change your tax jurisdiction, I will need to change your status to
                work from home. You will continue to be assigned to the SF office
26              for reporting purposes, and this change does mean that you will not
                have an assigned office in SF. I'm not sure how much you plan to be
27              in SF when we can travel again, but I wanted to make sure that you
                knew this change would impact that. Changing your status to work
28              from home will tie your tax jurisdiction to your home address.

United States District Court
Northern District of California

Lu Decl., Ex. A at ECF p. 11 (March 29, 2021 email from Israel to Westerman). According to Westerman, this request "related to paid time off and/or holiday as being artificially assigned to California in light of [his] more recent personal residence" in Wyoming.  Opposition at 4. In November 2021, Westerman "updated his status with FTI to record as a work-from-home employee based in Wyoming."  Lu Decl. ¶ 9. The record is silent, however, as to whether Westerman's tax jurisdiction was actually changed to Wyoming, and apparently Westerman did not lose his physical office in San Francisco.  *See* Westerman Decl. ¶ 13 ("At all times during my employment with FTI, I had a physical office in FTI's San Francisco offices.").[3]

On September 20, 2023, Westerman signed an amendment to the employment agreement that "largely concerned incremental compensation issues[.]"  *Id.*  ¶ 23; Lu Decl., Ex. C ("2023 Amendment").  The 2023 Amendment listed San Francisco as Westerman's principal office location. Lu Decl., Ex. C at ECF p. 44.

On January 15, 2024, Westerman sent FTI a letter resigning from his position at FTI, which he signed in Jackson, Wyoming and sent to FTI's General Counsel, who was based in Washington, D.C.  *Id.*  ¶¶ 24-25; Lu Decl., Ex. D (resignation letter).  According to Westerman, "[o]ther than sending this letter and limited administrative communications with human resources personnel, [he] had no contact with FTI employees based in Washington, D.C. regarding [his] resignation."  Westerman Opposition Decl. ¶ 25. February 29, 2024 was Westerman's last day of employment with FTI.  *Id.*  ¶ 26.

On March 1, 2024, the day after Westerman stopped working for FTI, he began working for Secretariat Advisors, LLC ("Secretariat"), a Georgia-based consulting firm that competes with FTI in a variety of sectors, including construction, forensic accounting, and investigations.  *Id.*  ¶¶ 28-29; Lu Decl. ¶ 16.[4]  Lu states, based on review of Secretariat's website, that Secretariat is a limited liability company organized under the laws of the State of Delaware with its principal place of business located in Atlanta, Georgia. Lu Decl. ¶ 17.  According to Westerman, he is

---

[3] FTI stipulated at the hearing that it does not dispute that Westerman had a physical office in its San Francisco office during the entire duration of his employment with FTI, even after he moved to Wyoming.

[4] At the hearing, the parties stipulated that Secretariat is a direct competitor of FTI.

1    "affiliated with Secretariat's San Francisco, California office[,]" as is "reflected on Secretariat's

2    public-facing website, available at https://secretariat-intl.com/people/edward-westerman/ (last

3    accessed on July 30, 2024)."  Westerman Opposition Decl. ¶ 30.  He states further that "[m]uch of

4    [his] work is related to building out a global practice for Secretariat, but [he has] multiple

5    engagements with attorneys located in California." *Id.*  ¶ 31.  He says that he "was hired, in part,

6    because of [his] many connections to former clients and attorneys in California."  *Id.*  Westerman

7    "continues to work remotely from [his] home in Wyoming, with periodic travel to California for

8    work."  *Id.*

9        **B.    Procedural Background**

10       Since FTI's general counsel learned of Westerman's intent to work for Secretariat, FTI has

11   been seeking to enforce the non-competition and non-solicitation covenants in the 2019

12   Employment Agreement. Lu Decl. ¶¶ 16-18.  On February 28, 2024, FTI's Associate General

13   Counsel, J. Tara Holubar, wrote a letter to Westerman acknowledging his letter of resignation and

14   reminding him of his "post-resignation obligations" under his employment agreement.  *Id.*  ¶ 19 &

15   Ex. E.  That letter stated that by working for Secretariat within the restricted period, Westerman

16   would be violating Section 12 of the 2019 Employment Agreement, resulting in $2,317,564.06 in

17   liquidated damages that would be due within two weeks of commencing his employment with

18   Secretariat.  *Id.*   The February 28, 2024 letter was sent via email and does not list any physical

19   address for the sender but Lu states that the letter was sent from FTI's Washington, D.C.

20   headquarters.  *Id.*

21       On March 25, 2024, after FTI learned Westerman was planning a visit to London "for the

22   apparent purpose of recruiting additional FTI professionals to join Secretariat[,]" Lu sent a

23   follow-up letter to Westerman "requesting assurances that he would comply with his post-

24   employment obligations under the Employment Agreement and demanding repayment of the

25   outstanding amounts he owed under the terms of that Agreement based on breaches of the non-

26   competition clause."  *Id.*  ¶¶ 20-21 & Ex. F.  The footer on this letter lists the address of an FTI

27   office in Washington D.C. and Westerman's Wyoming address is listed at the top of the letter.  *Id.*

28   According to Lu, this letter was sent from FTI's headquarters in Washington, D.C. to

United States District Court
Northern District of California

6

1   Westerman's home in Wyoming. Lu Decl. ¶ 21.

2       On March 28, 2024, FTI sued Secretariat in the district court for the Northern District of

3   Georgia based on its alleged "raiding" of FTI's employees. *FTI Consulting v. Secretariat*

4   *Advisors, LLC*, Case No. C-24-1356 ("Georgia Action").  Westerman is not named as a defendant

5   in that action but is listed as one of the FTI employees that Secretariat allegedly poached from

6   FTI.  Georgia Action, Compl. ¶ 5.

7       On April 12, 2024, FTI sued Westerman in the district court for the District of Columbia

8   seeking money damages and declaratory relief for Westerman's alleged breach of the 2019

9   Employment Agreement. Compl. *FTI Consulting, Inc. v. Westerman*, Case No. C-24-1055 ("D.C.

10  Action").  In the D.C. Action, FTI asserts that it has personal jurisdiction over Westerman "based

11  upon his transacting business in the District of Columbia, including through his employment

12  agreement with FTI (the 'Employment Agreement'), his travel to the District of Columbia to meet

13  with other senior FTI colleagues, and his numerous interactions with FTI personnel in the District

14  of Columbia in connection with his employment with FTI."  D.C. Action, Compl. ¶ 9.  On June 4,

15  2024, Westerman filed a motion to dismiss for lack of personal jurisdiction and improper venue in

16  the D.C. Action.  That motion is fully briefed and remains pending.

17      Westerman filed the instant action in San Francisco Superior Court on June 4, 2024 and

18  FTI removed to this Court on June 7, 2024, asserting subject matter jurisdiction on the basis of

19  diversity jurisdiction under 28 U.S.C. § 1332.  On July 15, 2024, FTI filed the Motion to Dismiss

20  and on July 18, 2024, Westerman filed a motion for a preliminary injunction barring FTI from

21  enforcing the non-competition and non-solicitation provisions in the 2019 Employment

22  Agreement against him.  Dkt. nos. 10, 22.  On August 21, 2024, FTI filed a motion seeking limited

23  expedited discovery in connection with Westerman's Preliminary Injunction Motion.

24  **III.    MOTION TO DISMISS**

25      **A.    Contentions of the Parties**

26          **1.  Motion**

27      In the Motion, FTI accuses Westerman of filing this action to "circumvent the District

28  Court for the District of Columbia's jurisdiction over these same claims in a pending, earlier-filed

United States District Court
Northern District of California

7

1    action between the parties." Motion at 8. FTI contends Westerman's efforts must fail, however,

2    because this Court lacks personal jurisdiction over FTI and venue is also improper. *Id.*

3         With respect to personal jurisdiction, FTI argues that there is neither general nor specific

4    jurisdiction over FTI because it has not engaged in continuous and systematic contacts with

5    California sufficient to establish general jurisdiction and Westerman's claims do not arise out of

6    FTI's activities in California. *Id.* Venue is improper, FTI contends, because 1) FTI does not reside

7    in the Northern District; 2) "a substantially identical action is and has been pending between FTI

8    and Plaintiff in Washington, D.C. for months[;]" and 3) "the events giving rise to Plaintiff's

9    claims—including his current work in Wyoming for FTI's Georgia-based competitor, as part of

10   building an international consulting practice—are not substantially connected to the Northern

11   District." *Id.*

12        In support of its contention that there is no general jurisdiction over FTI in California, FTI

13   points out that it is not incorporated in California and does not have its principal place of business

14   in California. Motion at 15. FTI argues further that while it maintains California offices, this is

15   not sufficient to establish that it is "essentially at home" for the purposes of general jurisdiction

16   given that it has offices throughout the United States, including in over 20 U.S. states and

17   Washington, D.C. Motion at 15-16 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 152 (2014);

18   *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017); *Bojorquez v. Abercrombie & Fitch, Co*., 193

19   F. Supp. 3d 1117, 1131 (C.D. Cal. 2016)).

20        FTI argues further that Westerman's claims do not arise out of FTI's contacts with

21   California and therefore, that he also cannot establish specific jurisdiction. *Id.* at 17. First, it

22   points to evidence that FTI did not enter into or negotiate the 2019 Employment Agreement in

23   California. *Id.* at 17 (citing *Rashidi v. Veritiss, LLC*, No. 2:16-cv-04761-CAS(JPRx), 2016 WL

24   5219448 (C.D. Cal. Sept. 19, 2016)). Second, it contends, the formation of the employment

25   agreement with a nonresident party is insufficient to give rise to personal jurisdiction in California.

26   *Id.* (citing *Rush v. Savchuk*, 444 U.S. 320, 330 (1980); *McGlinchy v. Shell Chem. Co*., 845 F.2d

27   802, 816 n.9 (9th Cir. 1988)).

28        Third, FTI cites the fact that the 2019 Employment Agreement "created continuing

8

obligations for Plaintiff that are unconnected to California, which is evident from the scope of the noncompetition and non-solicitation provisions at issue." *Id.* at 18 (citing *Teras Cargo Transp. (Am.), LLC v. Cal Dive Int'l (Australia) Pty Ltd.*, No. 15-CV-03566-JSC, 2015 WL 6089276, at *6 (N.D. Cal. Oct. 16, 2015)).  Moreover, FTI asserts, "FTI's efforts to enforce those obligations undoubtedly emanated from Washington, D.C., where it filed suit against Plaintiff following unrelated [sic] correspondence to and from its headquarters." *Id.*

Fourth, FTI argues that Westerman is not a California employee as he moved to Wyoming in 2016, changed his tax jurisdiction to Wyoming in 2021, and worked with clients throughout the United States and internationally.  *Id.* at 18-19 (citing *Hill v. Workday, Inc.*, No. 23-CV-06558-PHK, 2024 WL 3012802, at *11 (N.D. Cal. June 14, 2024)).

Fifth, FTI asserts that Westerman's "alleged injury—that his employment agreement with FTI is restricting [his] ability to work from his home in Wyoming for a Georgia company—is not connected to California." *Id.* at 19 (citing *Bristol Meyers Squibb v. Superior Court*, 582 U.S. 255, 264 (2017)).  Furthermore, FTI contends, "the provisions of the restrictive covenants are only at issue because of Plaintiff's new employment with a Georgia company, work that Plaintiff is continuing to perform from his residence in Wyoming, and Plaintiff's activities on behalf of Secretariat to build an international consulting practice." *Id.* To find personal jurisdiction under those circumstances would make "California courts the arbiter of all disputes concerning non-compete provisions in employment agreements—even when those contracts are challenged in declaratory judgment actions by employees who were not California residents or employees." *Id.* at 20.  FTI also argues that whether Westerman now works with Secretariet's California clients has no bearing on the jurisdiction inquiry as it is FTI's contacts with California that are the focus of that inquiry. *Id.* (citing *Walden v. Fiore*, 571 U.S. 277, 289 (2014)).

Finally, FTI argues that Westerman's claims do not arise out of his contacts with California because FTI's enforcement efforts are occurring in Washington, D.C. and Westerman himself was not a California resident at the time he signed the 2019 Employment Agreement.  *Id.* According to FTI, "[t]his is not the type of 'substantial connection' required for specific jurisdiction." *Id.*  (citing *Glencore Grain Rotterdam BV v. Shivnath Rai Harnarain Co.*, 284 F.3d

1    1114, 1123 (9th Cir. 2002)).

2         FTI argues further that exercise of specific jurisdiction over it does not "comport with the

3    principles of fair play and substantial justice" based on the seven-factor test applied to that

4    question  *Id.* at 20-24.

5         FTI challenges venue under 28 U.S.C. § 1391(b)[5] on the basis that Westerman has not

6    established that any of the three bases for venue in that section are met.  *Id.* at 24-25.  In particular,

7    it asserts that "[p]rongs one and three definitively cut against the Northern District of

8    California being the proper venue [because] FTI does not reside in the Northern District of

9    California, and the District of Columbia is a district in which the action may have been brought

10   (and indeed, is the district where FTI has already filed an action against Plaintiff based on

11   identical contractual provisions)."  *Id.*  at 24. The second prong of Section 1391(b), giving rise to

12   venue in a district where "a substantial part of the events happened[,]"  also is not met, FTI

13   contends, "because the employment agreement at issue was negotiated, executed, and enforced

14   from Washington, D.C.[,] Plaintiff substantially performed under the employment agreement in

15   Wyoming[,] [and] [t]he employment agreement was breached in Wyoming, Georgia, and possibly

16   many other locations as yet unknown to FTI[,]" and "the effects of the restrictive covenants in the

17   employment agreement are felt by Plaintiff in Wyoming and Georgia, where his new employer is

18   based, while the effects of Plaintiff's violations are felt most directly where FTI is based, in

19   Washington, D.C." *Id.* at 24-25 (citing *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th

20   Cir. 2003) for the proposition that "in cases involving employee's covenant not to compete, courts

21   should look to the place the contract was negotiated and executed, and place of performance and

22   breach").

23

24   ─────────────

    [5] Section 1391(b) provides for venue in the following judicial districts:
25
        (1) a judicial district in which any defendant resides, if all defendants are residents of the
26      [same] State . . .; (2) a judicial district in which a substantial part of the events or omissions
        giving rise to the claim occurred, or a substantial part of property that is the subject of the
27      action is situated, or (3) if there is no district in which an action may otherwise be brought .
        . ., [a] judicial district in which any defendant [may be found].
28
    28 U.S.C. § 1391(b).

### 2. Opposition

In his opposition brief, Westerman argues that the three-part test for specific jurisdiction is "easily met" because: 1) FTI purposefully availed itself of the privilege of conducting activities in California; 2) Westerman's claims arise from and relate to FTI's contacts with California; and 3) exercising jurisdiction over FTI comports with fair play and substantial justice. Opposition at 8.

According to Westerman, the purposeful availment requirement is met because "FTI deliberately reached out to then-California resident Mr. Westerman to employ him as a California-based expert consultant in FTI's San Francisco office" and "derived the benefits of its affiliation with a California-stationed employee." *Id.* at 8-9 (citing *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (1991); *Ting v. Orbit Commc'n Co.*, 105 F.3d 666, 1997 WL 8470, at *3 (9th Cir. 1997); *LeGarie v. Nurse*, No. 21-CV-04739-JCS, 2021 WL 5771144, at *7-9 (N.D. Cal. Dec. 6, 2021)).

Westerman argues that his claims arise from and relate to FTI's contacts with California because they are "based on his employment agreement with FTI, which includes working with FTI's California office, serving FTI's California clients, and building FTI's California business." *Id.* at 10. According to Westerman, "courts find specific jurisdiction based on a fraction of the connections present here." *Id.* (citing *Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 594 (N.D. Cal. 2022); *Berdux v. Project Time & Cost, Inc. Berdux v. Project Time & Cost, Inc.*, 669 F. Supp. 2d 1094, 1098 (N.D. Cal. 2009)).

As to the third requirement, Westerman argues that because the first two requirements are met there is a presumption that jurisdiction is reasonable, which shifts the burden to FTI to make a "compelling case" that jurisdiction is unreasonable. *Id.* at 10-11 (citing *Klemmer v. Evans,* No. C-08-03732 JCS, 2009 WL 10695592, at *6 (N.D. Cal. Feb. 13, 2009), report and recommendation adopted, No. 08-03732 CW, 2009 WL 10695461 (N.D. Cal. Mar. 19, 2009) (citation omitted)). Westerman contends FTI has not met that burden and that the cases it cites on this point are "factually distinct" and rely on "irrelevant facts." *Id.* at 11 (citing Motion at 16-17) (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008); *Peterson v. Kennedy*, 771 F.2d 1244, 1261-62 (9th Cir. 1985); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 816 n.9 (9th Cir. 1988)).

Westerman further asserts that FTI's reliance on *Bristol Meyers Squibb v. Superior Court*,

11

582 U.S. 255 (2017) is misplaced because that case "involved mostly non-California plaintiffs who had no connection to the forum state" whereas Westerman "was a California employee who now seeks to continue to keep work in California" and "he has therefore 'suffered harm in th[is] State' as a result of the contract he seeks to enjoin." *Id.* at 12. Likewise, Westerman argues that *Teras Cargo Transp. (Am.), LLC v. Cal Dive Int'l (Australia) Pty Ltd*., No. 15-CV-03566-JSC, 2015 WL 6089276, at *6 (N.D. Cal. Oct. 16, 2015) is distinguishable because that case concerned "an employment contract for a non-California business, unlike Mr. Westerman's 2019 Employment Agreement, which expressly contemplated performance on behalf of FTI's San Francisco office." *Id.* at 12. Westerman also rejects FTI's reliance on *Hill v. Workday, Inc*., No. 23-CV-06558-PHK, 2024 WL 3012802, at *11 (N.D. Cal. June 14, 2024), which Westerman contends FTI has taken "out of context" because it was addressing the extraterritorial reach of FEHA and the CFRA rather than personal jurisdiction. *Id.* at 12-13.

Westerman also argues that FTI's "fixation on the location where Mr. Westerman signed and/or negotiated the 2019 Employment Agreement is irrelevant" and that the case cited on this issue, *Rashidi v. Veritiss, LLC*, No. 2:16-cv-04761-CAS(JPRx), 2016 WL 5219448 at *6 (C.D. Cal. Sept. 19, 2016), "did *not* hold—as FTI alleges—that the defendant must negotiate or enter into the contract in the forum state." *Id.* at 13 (emphasis in original). According to Westerman, "[w]here, as here, the substance of the underlying contract directly and expressly implicates California, the location where either party executed the contract is immaterial." *Id.* (citing *Berdux*, 669 F. Supp. 2d at 1101; *McGlinchy*, 845 F.2d at 816; *Rashidi*, 2016 WL 5219448, at *5-6; *Lerman v. My Pillow, Inc*., No. SACV 12-0916 AG (RNBx), 2012 WL 12953662, at *4 (C.D. Cal. Oct. 1, 2012); *Roth*, 942 F.2d at 622).

Westerman also contends there is general jurisdiction over FTI based on the large number of offices and clients it has in California, which meet the "continuous and systematic" contacts requirement under *Daimler*. *Id.* at 14-15. According to Westerman, the Ninth Circuit has found general jurisdiction in cases involving facts similar to the facts here. *Id.* at 15 (citing *Tuazon v. R.J. Reynolds Tobacco Co*., 433 F.3d 1163, 1172-75 (9th Cir. 2006)). Furthermore, he contends, the facts of *Daimler*, where the Court found that there was no general jurisdiction because

1   defendant was not "at home" in the state, are distinguishable from the facts of this case because

2   there, "the defendant company Mercedes-Benz . . . had only scant California-based facilities and

3   third-party dealership sales, both of which accounted for a mere 2.4% of its revenue." *Id.* at 15

4   (citing *Daimler*, 571 U.S. at 139, 148). In contrast, Westerman asserts, "FTI has more than double

5   the number of offices in California, as compared to any other state and derives significant revenue

6   from California." *Id.* (citing Corkery Decl. ¶ 2). Westerman also points out that "FTI makes no

7   representations as to its overall percentage of revenue from California-based work or the

8   percentage of California-based employees, as compared to other states." *Id.*

9          Finally, Westerman argues that venue in this district is proper under 28 U.S.C. §

10  1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim[s]

11  occurred" in this District. *Id.* at 16-18.[6] In particular, he points to the fact that "FTI at all times

12  identified Mr. Westerman as a San Francisco based employee, and Mr. Westerman spent

13  significant time supporting California-based FTI clients" and that "FTI now seeks to prevent Mr.

14  Westerman from working with these same clients and former colleagues and from working on

15  behalf of his new employer in its San Francisco office." *Id.* at 16-17. According to Westerman,

16  "[c]ourts analyzing similar facts readily find venue proper." *Id.* at 17 (citing *Richmond*

17  *Technologies, Inc. v. Aumtech Business Solutions*, No. 11-CV-02460-LHK, 2011 WL 2607158, at

18  *10 (N.D. Cal. July 1, 2011)).

19         Furthermore, Westerman contends, "even when it is unclear where the employment

20  contract was negotiated and executed, courts still find venue proper where it is reasonably clear

21  that the intended place of performance of the contract is in California." *Id.* (citing *Jacobs v.*

22  *Sustainability Partners LLC*, No. 20-CV-01981-PJH, 2020 WL 5593200, at *5 (N.D. Cal. Sept.

23  18, 2020); *Richmond Techs.*, 2011 WL 2607158, at *10; *Lerman*, 2012 WL 12953662,

24  at *7). Westerman also argues that venue is proper under 28 U.S.C. § 1391(c)(2) because he

25  "easily satisfies the test for specific jurisdiction." *Id.*

26         Westerman rejects FTI's reliance on the Eleventh Circuit's decision in *Jenkins Brick Co. v.*

27  _____

28  [6] Westerman stipulated at the motion hearing that his venue argument is based *only* on Section
    1391(b)(2) and that he does not dispute that Sections 1391(b)(1) & (3) do not apply.

United States District Court
Northern District of California

*Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003), arguing that that case reflects an "outlier position" with respect to venue and has been rejected by courts in this district. *Id.* at 18 (citing *Jacobs*, 2020 WL 5593200, at *6).

### 3.  Reply

In its Reply, FTI asserts that the facts relating to personal jurisdiction and venue are undisputed and reiterates the arguments in the Motion that these facts are insufficient to establish personal jurisdiction or venue in this district.

### B.    Rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure

A party may move for dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction.  "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant."  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  "Where, as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'"  *Id.* (quoting *Sher v. Johnson*, 911 F.3d 1357, 1361 (9th Cir.1990)).  "Although the plaintiff 'cannot simply rest on the bare allegations of its complaint,' . . .  uncontroverted allegations in the complaint must be taken as true."  *Schwarzenegger v. Fred Motor Corp.*, 374 F.3d 797, 800 (9th Cir. 1998) (quoting *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784, 787 (9th Cir.1977)).  "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor."  *Id.* (citing *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)).

In reviewing a challenge to venue under Rule 12(b)(3), the Court accepts as true the allegations in the complaint unless they are contradicted by the defendant's evidence. *BOA Technology, Inc. v. MacNeill Engineering Company, Inc.*, No. 23-CV-01431-GPC-JLB, 2024 WL 3929890, at *2 (S.D. Cal. Aug. 23, 2024) (citing *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1129 (C.D. Cal. 2009)); *see also Doe 1 v. AOL LLC, 552 F.3d 1077,* 1081 (9th Cir. 2009) (when considering a Rule 12(b)(3) motion, "pleadings need not be accepted as true, and facts outside the pleadings may be considered.").  Even where the facts are

United States District Court
Northern District of California

14

1    contradicted, the court must still "draw all reasonable inferences in favor of the non-moving party

2    and resolve all factual conflicts in favor of the non-moving party[.]" *Id.* (citing *Murphy v.*

3    *Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004)). Once the defendant makes a venue

4    challenge, the plaintiff bears the burden of demonstrating that venue is proper. *See Piedmont Label*

5    *Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).

6        **C.    Personal Jurisdiction**

7            **1.   Legal Standards**

8        "Where . . . there is no applicable federal statute governing personal jurisdiction, the

9    district court applies the law of the state in which the district court sits." *Dole Food Company,*

10    *Inc. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002). "Under California's long-arm statute,

11    California state courts may exercise personal jurisdiction 'on any basis not inconsistent with the

12    Constitution of this state or of the United States.'" *Daimler AG v. Bauman*, 571 U.S. 117, 125

13    (2014) (quoting Cal. Civ. Proc. Code § 410.10). Thus, the Court must determine whether the

14    exercise of personal jurisdiction over FTI "comports with the limits imposed by federal due

15    process." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985)).

16        "For a court to exercise personal jurisdiction over a non-resident defendant, that defendant

17    must have at least 'minimum contacts' with the relevant forum such that the exercise of

18    jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Dole Food*

19    *Company*, 303 F.3d at 1110–11 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316

20    (1945)). "In judging minimum contacts, a court properly focuses on 'the relationship among the

21    defendant, the forum, and the litigation.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting

22    *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). "Opinions in the wake of the pathmarking

23    *International Shoe* decision have differentiated between general or all-purpose jurisdiction, and

24    specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S.

25    915, 919 (2011) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, nn.

26    8, 9 (1984)).

27        "A court may assert general jurisdiction over foreign (sister-state or foreign-country)

28    corporations to hear any and all claims against them when their affiliations with the State are so

United States District Court
Northern District of California

'continuous and systematic' as to render them essentially at home in the forum State." *Id.* Typically, this requirement is met when a corporation is incorporated in the forum state or has its principal place of business there, but the Court has recognized "that in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n. 19.

Application of this standard "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Daimler*, 571 U.S. at 139 n. 20. Thus, the Supreme Court has explained that "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* "Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Id.* (citation omitted). The *Daimerler* Court found that "[n]othing in *International Shoe* and its progeny suggests that 'a particular quantum of local activity' should give a State authority over a 'far larger quantum of . . . activity' having no connection to any in-state activity." *Id.*

A court may exercise specific jurisdiction when the following requirements are met:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Dole Food*, 303 F.3d at 1111 (internal quotations and citations omitted). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* If the plaintiff succeeds in satisfying both of the first two prongs, the burden

1  then shifts to the defendant to present a 'compelling case' that the exercise of jurisdiction would

2  not be reasonable." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476–78).

3       To determine whether the exercise of jurisdiction is reasonable, and therefore, "comports

4  with fair play and substantial justice," courts consider seven factors:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

9  *Insurance Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266, 1270 (9th Cir. 1981).

10       **2. General Jurisdiction**

11       In support of his assertion that this Court has general jurisdiction over FTI, Westerman

12  relies heavily on a Ninth Circuit case, *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163 (9th

13  Cir. 2006).  In that case, the Ninth Circuit found that there was general jurisdiction over the

14  tobacco company defendant because it had a "serious" presence in the forum and generated

15  "enormous" revenues from the state. 433 F.3d at 1173. The defendant also had held a license to do

16  business in the state, advertised in purely local publications, engaged in local political activity to

17  protect its market, and maintained a permanent office and workforce in the state. *Id.*  The Court

18  finds Westerman's reliance on *Tuazon* misplaced, however.

19       *Tuazon* was decided before *Daimler* and *Goodyear*, and the Supreme Court's more "recent

20  guidance on the theory of general jurisdiction has made clear that the concept of 'home' in the

21  context of general jurisdiction should be understood narrowly[.]"  *Senne v. Kansas City Royals*

22  *Baseball Corp.*, 105 F. Supp. 3d 981, 1018 (N.D. Cal. 2015).  Furthermore, the *Daimler* Court

23  cautioned that a company that has offices throughout the United States may not be subject to

24  general jurisdiction simply on the basis of maintaining offices in the forum state where the

25  quantum of unrelated activity that occurs outside of the forum is "much larger" than the quantum

26  of local activity. 571 U.S. at 139 n. 20.

27       This point was driven home by the Supreme Court in *BNSF Ry. Co. v. Tyrrell,* 581 U.S.

28  402, 414 (2017).  In that case, the Supreme Court found that there was no personal jurisdiction

United States District Court
Northern District of California

17

1    over BNSF Railroad Company in Montana even though BNSF had "over 2,000 miles of railroad

2    track and more than 2,000 employees in Montana."  581 U.S. at 414.  Citing *Daimler*, the Court

3    explained that the contacts of BNSF with the forum state had to be considered "in their entirety"

4    and reiterated that "[a] corporation that operates in many places can scarcely be deemed at home

5    in all of them."  *Id.* (quoting *Daimler*, 571 U.S. at 139 n. 20).  Thus, the Supreme Court  held that

6    BNSF could be subject only to specific jurisdiction in Montana.  *Id.*

7            Here, Westerman points to evidence that FTI maintains eight offices in California, which is

8    more than twice the number of offices it maintains in any other state.  He has not, however,

9    offered any evidence or pointed to any uncontroverted allegations in his complaint establishing

10   that the *quantum* of FTI's activities in California (whether measured in terms of revenues, number

11   of employees or volume of clients) is greater than the quantum of its activities outside of

12   California.  Thus, his attempt to distinguish *BNSF* on the basis that in that case, the "amount of

13   railroad track and employees accounted for only 6% of the defendant's total track mileage and less

14   than 5% of its workforce[,]" Opposition at 16 (citing *BNSF Ry. Co.*, 581 U.S. at 406), is to no

15   avail.  And while Westerman calls out FTI for failing to make any representations "as to its overall

16   percentage of revenue from California-based work or the percentage of California-based

17   employees, as compared to other states[,]" Opposition at 15, it is Westerman's burden to make a

18   prima facie case that there is general jurisdiction over FTI.  He has not met that burden.

19   Therefore, the Court concludes, for the purposes of the instant Motion to Dismiss only, that there

20   is no general jurisdiction over FTI in California.[7]

21           **3.  Specific Jurisdiction**

22           FTI does not dispute that the first prong of the three-prong test for specific jurisdiction –

23   the purposeful direction requirement – is satisfied.  Rather, it argues that the second and third

24   prongs of the test are not met.  In particular, it contends Westerman's claims do not "arise out of

25   or relate to" FTI's forum-related activities and exercise of personal jurisdiction over FTI does not

26   comport with principles of fair play and substantial justices.  The Court finds both arguments

27   _____

28   [7] The parties agreed at the hearing that the Court may revisit this issue at the summary judgment
     stage of the case, when the factual record has been developed.

1    unpersuasive.

2        a.    Whether Westerman's claims arise out of or relate to FTI's forum-related
              activities

3

4        While FTI argues that the second prong of the specific jurisdiction test is not met, the cases

5    it relies on address the *first prong* of the test, the purposeful availment requirement, and shed little

6    light on the "arising out of or relate" prong of the test.  In its briefs, FTI does not even address the

7    standards that govern this requirement or the recent Supreme Court and Ninth Circuit authority on

8    this question.  When applying those standards to the facts of this case, the Court finds that the

9    second prong of the specific jurisdiction inquiry is met.

10       Historically, the Ninth Circuit has applied a "but for" standard to the "arising out of"

11   requirement.  *Doe v. Unocal Corp*., 248 F.3d 915, 924–25 (9th Cir.2 001) (citing *Ballard v.*

12   *Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995)); see also *Alexander v. Circus Circus Enterprises,*

13   *Inc*., 939 F.2d 847, 853 (9th Cir. 1991), withdrawn and superseded on rehearing, 972 F.2d 261

14   (9th Cir. 1992) ("[t]his circuit has already decided that the critical focus in the 'arising out of'

15   prong is whether, 'but for' the defendant's forum-related activities, the injury would have

16   occurred; that is, whether the 'entire course of events . . . was an uninterrupted whole which began

17   with, and was uniquely made possible by, the [defendant's] contacts in [the forum state]' ")

18   (quoting *Shute v. Carnival Cruise Line*s, 897 F.2d 377, 383–84 (9th Cir.1990), rev'd on other

19   grounds by *Carnival Cruise Lines v. Shute*, 499 U.S. 585(1991)).

20       Recently, the Supreme Court applied a more "relaxed standard" in *Ford Motor Co. v.*

21   *Mont. Eighth Jud. Dist. Ct*., 592 U.S. 351 (2021). *Zarkesh v. Vinmar Polymers Am., LLC*, No.

22   C23-1002-JCC, 2023 WL 8089733, at \*1 (W.D. Wash. Nov. 21, 2023). In *Ford*, the Supreme

23   Court rejected a "causation only approach" to the second prong of the specific jurisdiction inquiry,

24   stating that "[n]one of [its] precedents has suggested that only a strict causal relationship between

25   the defendant's in-state activity and the litigation will do."  592 U.S. at 362. The Court pointed to

26   its "most common formulation of the rule[,] [which] demands that the suit 'arise out of *or relate* to

27   the defendant's contacts with the forum."  *Id.* (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of*

28   *California, San Francisco Cnty*., 582 U.S. 255, 262 (2017) (quoting *Daimler*, 571 U.S. at 127))

United States District Court
Northern District of California

(emphasis added in *Ford*).  It continued:

> The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase "relate to" incorporates real limits, as it must to adequately protect defendants foreign to a forum. But again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct.

*Ford*, 592 U.S. at 362.

In the wake of *Ford*, the Ninth Circuit has recognized that while the "arising out of or relate to" prong is satisfied when the "but for" standard is met, that is not the *only* way the requirement is met.  Rather, the "Supreme Court announced in *Ford* that 'arise out of' and 'relate to' are alternatives: for a claim to arise out of a defendant's forum contacts requires causation, while a claim can relate to those contacts, even absent causation, where, for example, 'a company . . . serves a market for a product in the forum State and the product malfunctions there.' " *Yamashita v. LG Chem, Ltd*., 62 F. 4th 496, 504–05 (9th Cir. 2023). Thus, "*Ford* modified but did not abolish the requirement that a claim must arise out of or relate to a forum contact in order for a court to exercise specific personal jurisdiction." *Id.* at 508.

Further, the Ninth Circuit has noted that the "arising out of or relate to" prong of the specific jurisdiction test tends to be "less exacting" and thus, "[i]n most cases where the plaintiff's allegations satisfy the purposeful direction test, the 'arise out of or relate to' prong of the minimum contacts inquiry will also be satisfied." *Burri L. PA v. Skurla*, 35 F.4th 1207, 1216 n. 5 (9th Cir. 2022). This is because the "purposeful direction test ordinarily subsumes the . . . 'arise out of or relate to' inquiry." *Id.* (citing *Dole Food Co*., 303 F.3d at 1114 (holding that because purposeful direction was established, it was "obvious" that the second prong of the minimum contacts test was also satisfied)). While *Burri* involved a tort case and thus was analyzed under the purposeful direction theory rather than the purposeful availment test that is applied in contract cases, *see Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2004), the reasoning of that case and of *Dole Foods*, upon which the court relied, suggests that the same conclusion applies in both contexts.

United States District Court
Northern District of California

1    Here, FTI does not dispute that it has purposefully availed itself of the privilege of

2    conducting activities in California and the Court finds that this requirement is satisfied.  "Because

3    a contract is 'ordinarily but an intermediate step serving to tie up prior business negotiations with

4    future consequences which themselves are the real object of the business transaction,' a court must

5    evaluate four factors to determine whether purposeful availment has occurred: (1) prior

6    negotiations, (2) contemplated future consequences, (3) the terms of the contract, (4) the parties'

7    actual course of dealing." *Rashidi v. Veritiss, LLC*, No. 216CV04761CASJPRX, 2016 WL

8    5219448, at *3 (C.D. Cal. Sept. 19, 2016) (quoting *Burger King*, 471 U.S. at 478-479). All of

9    these factors point to the conclusion that FTI purposefully availed itself of the privilege of doing

10   business in California when it entered into the 2019 Employment Agreement with Westerman.

11   First, FTI initially hired Westerman by acquiring his California-based practice group at a

12   time when Westerman was a resident of California.  Second, the contemplated future

13   consequences of the agreement were for Westerman to serve as a managing director of FTI's San

14   Francisco office, as is explicitly stated in the 2019 Employment Agreement and the 2023

15   Amendment.  Finally, Westerman maintained a physical office at FTI's San Francisco location at

16   all relevant times, including during the period when he worked remotely from Wyoming, spent a

17   significant amount of time every year in San Francisco for work, and was identified by FTI on its

18   website and on Westerman's business card as an employee of the San Francisco office.

19   Under those circumstances, it is difficult to fathom FTI's insistence that Westerman was

20   *not* a California employee because he worked remotely from Wyoming.  FTI places great

21   emphasis on Westerman's use of Wyoming as his "tax jurisdiction" but offers no explanation of

22   why the rules that govern the taxation of Westerman's vacation and paid holidays have any

23   bearing on the personal jurisdiction inquiry.   Furthermore, the "less exacting" "arising out of or

24   related to" requirement is clearly met under the standards set forth above as FTI entered into an

25   employment agreement with Westerman specifying that Westerman would be an employee of

26   FTI's San Francisco office and included the restrictive covenants that are the basis of Westerman's

27   claims.

28   The authority FTI cites to support its arguments related to this prong of the specific

21

jurisdiction test is not on point.  FTI repeatedly relies on *Bristol Myers Squibb v. Superior Court*, 582 U.S. 255 (2017), calling it "instructive" and arguing that its reasoning applies here.  Motion at 17; Reply at 12-13.  But that case does not help FTI.   *Bristol Meyers* stands for the proposition that "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.' " *Ford.*, 592 U.S. at 359–60) (quoting *Bristol Meyers*, 528 U.S. at 262) (quoting *Goodyear*, 564 U.S. at 919).  That case, however, did not involve an employment contract and the facts were quite different from the facts here.

In *Bristol Meyers*, California residents and non-residents sued the manufacturer of a prescription drug that was sold in California, bringing products liability and false advertising claims based on allegations that they had been injured by the drug. 528 U.S. at 259. Although the non-resident plaintiffs had not purchased the drug in California or been injured by it there, the California Supreme Court found that their claims arose out of the manufacturer's ties with California because the *resident* plaintiffs had suffered similar harm in California, applying a "sliding scale approach to specific jurisdiction" under which "the more wide ranging the defendant's forum contacts, the more readily is shown a connection between the forum contacts and the claim." *Id.* at 260 (citation omitted).  The United States Supreme Court rejected this approach, finding that it was a "loose and spurious form of general jurisdiction" and found that the connection between the manufacturer's contacts with California and the claims of the non-resident plaintiffs' claims was too attenuated to meet the "arising out of or relate to" requirement.  *Id.* at 264-265.  The facts here are markedly different, however, as FTI maintained multiple offices in California and entered into an employment agreement with Westerman to work in one of those offices.

Likewise, FTI's reliance on *Rashidi v. Veritiss, LLC*, No. 2:16-cv-04761-CAS(JPRx), 2016 WL 5219448 (C.D. Cal. Sept. 19, 2016) is misplaced. FTI cites *Rashidi* in support of its assertion that there is no specific jurisdiction because the 2019 Employment Agreement in this case was not negotiated or signed in California.  Motion at 17. But *Rashidi* did not establish a bright-line test requiring that a contract must have been negotiated and/or signed in the forum state in order for its

breach to give rise to specific jurisdiction.  Rather, that case applied the *Burger King* factors to the purposeful availment inquiry and found that under the facts of that case, there was no connection to the forum state.  2016 WL 5219448, at *6.  It went on to conclude the claims did not arise out of the defendant's conduct in the forum.  But the facts of that case are not analogous to the facts here.

The plaintiff in *Rashidi* was hired by a company called Veritiss to perform work in Afghanistan, where the day-to-day supervision of his employment was handled by a separate company, Mission Essential.  *Id.* at *1. The plaintiff was eventually terminated by Mission Essential while the plaintiff was on medical leave in California based on time-card discrepancies, but the only contact Mission Essential – an Ohio limited liability company with offices in Ohio and Virginia – had with California was an email sent to the plaintiff requesting that he address the discrepancies; Mission Essential did not terminate the plaintiff in that email, however.  *Id.*  The plaintiff sued both Veritiss and Mission Essential, but only Mission Essential challenged personal jurisdiction.  The court found that the purposeful availment requirement was not satisfied as to Mission Essential and further concluded that the wrongful termination claims asserted by the plaintiff did not arise out of the single email to California, applying the "but-for" test that was accepted in this Circuit prior to *Ford*. The court reasoned that that test was not met because "Mission Essential's email to Rashidi in California did not address Rashidi's termination, the basis for Rashidi's claims." *Id.*  at *6.  FTI, in contrast to Mission Essential in *Rashidi*, hired Westerman to work as a managing director in its San Francisco office and entered into an employment contract related to that position that contains the non-compete provisions that are the subject of these claims.   As discussed above, these contacts are sufficient to satisfy both the first and second prongs of the specific jurisdiction inquiry. Moreover, the court in *Rashidi* applied the stricter standard that was applied pre-*Ford*, further undermining FTI's reliance on that case.

Accordingly, the Court finds that the "arise out of or relate" requirement is satisfied here.[8]

---

[8] FTI belatedly brings to the Court's attention a 2019 San Francisco Superior Court decision in which the court found that it lacked personal jurisdiction over claims brought by FTI employees challenging non-compete provisions in his employment agreements.  *See* FTI's Supplement

b.   Whether Exercise of Jurisdiction is Reasonable

Because Westerman has demonstrated that the first two prongs of the specific jurisdiction inquiry are satisfied, it is FTI's burden to make a "compelling case" that exercise of personal jurisdiction is unreasonable.  It has not done so.

**Purposeful Interjection.** FTI asserts that its "purposeful interjection" in this forum is so small as to weigh against a finding of personal jurisdiction, citing *Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1122 (C.D. Cal. 2007).  Motion at 21.  But in *Mitan*, the facts that led the court to conclude that the personal interjection requirement was not met were dramatically different from the facts here.  There, a California man purchased a business (Prime Line) from an Arkansas couple (the Feeneys) and sued them in California for various torts allegedly committed in connection with that transaction and with subsequent interactions with American Express relating to obtaining credit for the business.  497 F. Supp. 2d at 1115. The Feeneys' only contact with California that had any connection to the plaintiff was a telephone conversation that occurred when the Redondo Beach, California police department called Mr. Feeney in connection with the plaintiff's arrest.  *Id.*  at 1122.  In fact, the declarations supplied by the Feeneys indicated that they had virtually *no* contacts with California:

> According to the Feeneys, the following is true: the Feeneys are residents of Arkansas; they have never been residents of California; they do not own any real or personal property in California, and they do not lease, rent or otherwise possess any real or personal property in California; they do not pay any taxes in California and maintain no bank accounts in California; Prime Line is not registered to do business in California and does not have a registered agent for service

_____

Request for Judicial Notice in Support of Motion to Dismiss Plaintiff's Complaint ("Supp. RJN"). While the Court takes judicial notice of this decision under Rule 201 of the Federal Rules of Evidence on the basis that it is "not subject to reasonable dispute[,]" the request is nonetheless improper to the extent that the decision was issued many years ago and should have been cited in FTI's opening brief.  Even if the Court were to consider this decision, however, it would not change the result here.  The decision itself is brief and does not contain a recitation of the facts. Moreover, it appears from the court's decision that the plaintiffs based their claim of specific jurisdiction in California on the fact that FTI "directed" them to work in California.  Supplemental Declaration of Chris Jalien in Support of Defendants FTI Consulting, Inc. and FTI LLC's Request for Judicial Notice in Support of Motion to Dismiss ("Jalien Supp. Decl."), Ex. A.  The court found that the claims did not arise out of the employment agreement that was being challenged because it was not negotiated and executed in California and the plaintiffs were not California residents.  However, there is no suggestion that the employment agreements of those plaintiffs specifically envisioned that performance of the contract would be in California, in contrast to the facts here.

of process in California; the Feeneys and Prime Line do not and have never maintained an office in California; the Feeneys and Prime Line do not regularly buy goods or services from residents of California; they do not regularly do or solicit business in California or engage in any advertising in California; and neither Feeney has traveled to California in more than ten years. (Doug Feeney Decl. ¶ ¶ 2–14; Doreen Feeney Decl. ¶¶ 2–14.)

With respect to the allegations in Plaintiff's complaint, the Feeneys state that all transactions and interactions with Plaintiff occurred in Arkansas. (Doug Feeney Decl. ¶ 15; Doreen Feeney Decl. ¶ 15.) They claim they were not aware Plaintiff resided in California and that Plaintiff represented to the Feeneys that his name was John Smith. (Doug Feeney Decl. ¶ 15; Doreen Feeney Decl. ¶ 15.) Doreen Feeney asserts that she had no contact with American Express and no contact with any American Express entity regarding Plaintiff. (Doreen Feeney Decl. ¶¶ 16, 17.) Doug Feeney states that he only contacted the Arkansas office of American Express about Plaintiff and never contacted American Express in California. (Doug Feeney Decl. ¶ 16.) Doug Feeney asserts that the only contact he had with California relating to Plaintiff was initiated by the Redondo Beach police after Plaintiff had been arrested. (Doug Feeney Decl. ¶ 17.) Doug Feeney also asserts that he did not know John Smith was Kenneth Mitan until Redondo Beach police told him. (Doug Feeney Decl. ¶ 17.)

*Id.* at 1116.  Under these circumstance, the court found that the purposeful interjection factor weighed against a finding that exercise of personal jurisdiction was reasonable. There is no comparison between those facts and the ones here, where FTI operates eight offices in California and hired the plaintiff to be an employee in one of those offices. Here, the purposeful interjection factor weighs in favor of the conclusion that exercise of personal jurisdiction in California is reasonable.

**Burden of litigating in California**.  FTI contends it will be a burden to litigate this case in California because its principal office is in Maryland and its corporate headquarters are in Washington, D.C.  Motion at 21.  This factor typically weighs in favor of a defendant who is a non-U.S. resident. *See Tuazon v. R.J Reynolds Tobacco Co*., 433 F.3d 1163, 1175 (9th Cir. 2006). Under those circumstances, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id*. (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987)). Here, however, defending itself in California will not subject FTI to a foreign legal system.   Further, although defending the case in California will

United States District Court
Northern District of California

1    create some burden, "with the advances in transportation and telecommunications and the

2    increasing interstate practice of law, any burden is substantially less than in days past." *Menken v.*

3    *EMM*, 503 F.3d 1050, 1060 (9th Cir. 2007) (citation omitted).  This burden will not be

4    "onerous[,]" given FTI's substantial business in California.  *Tuazon*, 433 F.3d at 1175.  Therefore,

5    this factor weighs only slightly in FTI's favor. *Shorter v. Peaches Uniforms, Inc.*, No. 2:10-CV-

6    02232, 2010 WL 5135366, at *4 (E.D. Cal. Dec. 8, 2010).

7           **Conflict with defendant state sovereignty**. FTI contends Washington D.C. has a greater

8    interest in asserting jurisdiction because its main headquarters is there, citing *Brand v. Menlove*

9    *Dodge*, 796 F.2d 1070, 1075 (9th Cir. 1986) for the proposition that "the exercise of personal

10   jurisdiction is not reasonable where action could proceed in defendant's home State."  In *Brand*,

11   however, the court expressly concluded that the sovereignty factor did *not* support a finding that

12   jurisdiction was unreasonable.  In that case, the Utah-based defendant challenged personal

13   jurisdiction in California. 796 F.2d at 1072.  Although the court ultimately concluded that exercise

14   of specific jurisdiction over the defendant was unreasonable, it explained that the sovereignty

15   factor did not point to that conclusion, stating:

16           The conflict with the sovereignty of the defendant's state is not a very
             significant factor in cases involving only U.S. citizens; conflicting
17           policies between states are settled through choice of law analysis, not
             through loss of jurisdiction. *See Burger King*, 105 S.Ct. at 2188 n. 26;
18           Haisten, 784 F.2d at 1402; *see also Keeton*, 465 U.S. at 778, 104 S.Ct.
             at 1480. Utah's sovereignty would not be significantly impaired by
19           allowing the action to proceed in California.

20   *Id.* at 1076.  Thus, FTI's reliance on this factor is misplaced.  Further, FTI has cited no authority in

21   which courts have found that this factor supports unreasonableness merely because the defendant

22   has its headquarters in another state or is incorporated in another state. This factor does not

23   support its assertion that exercise of jurisdiction over FTI is unreasonable.

24           **California's Interest**. FTI argues that "California has no interest in opening its courts to

25   nonresident plaintiffs with attenuated connections to California."  Motion at 22 (citing *Moretti v.*

26   *Hertz Corp.*, No. C 13-02972 JSW, 2014 WL 1410432, at *5 (N.D. Cal. Apr. 11, 2014); *Shanze*

27   *Enters., Inc. v. Am. Cas. Co. of Reading, Pa.*, No. 2:14-CV-02623-KJM-AC, 2015 WL 1014167,

28   at *6 (E.D. Cal. Mar. 5, 2015).  Westerman, on the other hand, contends California has a strong

United States District Court
Northern District of California

26

United States District Court
Northern District of California

1    public policy interest in protecting California employees from restrictive covenants such as the

2    ones in his 2019 Employment Agreement with FTI.  Opposition at 3 n. 1 (citing *Application Grp.,*

3    *Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 902 (1998)). Neither party has cited authority that

4    is on point.

5              Neither of the cases cited by FTI (*Moretti*  and *Shanze*) involved personal jurisdiction,

6    involving instead motions to transfer under 28 U.S.C. § 1404(a) based on the convenience of the

7    forum state.  Further, neither case addresses California's interest in protecting California

8    employees who work remotely from another state from non-compete provisions in employment

9    contracts with corporations headquartered outside of California but who operate offices within the

10   state and employ remote workers to staff those offices.  Likewise, the case cited by Westerman

11   addresses a choice of law question and not personal jurisdiction.

12             From the case law this Court has found, this factor is generally treated as a "toss up" in this

13   Circuit in the contract context.  *See Roth v. Garcia Marquez*, 942 F.2d 617, 624 (9th Cir. 1991).

14   On the one hand, states generally have an interest in protecting their residents from harm, though

15   this interest is usually expressed in connection with torts rather than contracts; on the other hand,

16   states generally do not have an interest in the adjudication of private contractual disputes.  *Id.*

17   Therefore, the Court concludes that this factor is neutral.

18             **Efficiency of the Forum**. Courts evaluate this factor by looking at where the witnesses

19   and the evidence are likely to be located. *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561-62 (9th

20   Cir. 1995). Although FTI asserts that the witnesses and evidence are located outside of California,

21   its assertions are entirely conclusory.  It has not identified any specific witnesses or evidence in

22   support of its assertion.  Therefore, this factor is neutral.

23             **Plaintiff's Interest in Convenient and Effective Relief**. Westerman does not rely on this

24   factor to establish that jurisdiction is reasonable – perhaps because he does not reside in the forum

25   – and neither the Ninth Circuit nor the Supreme Court has given "much weight to inconvenience

26   to the plaintiff." *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 476 (9th Cir. 1995) (citing *Core-Vent*

27   *Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993), holding modified by *Yahoo! Inc. v.*

28   *La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006)).  There also does

not appear to be any reason why Westerman could not obtain effective relief in the District Court for the District of Columbia, assuming personal jurisdiction over Westerman in the District of Columbia is proper. Therefore, this factor is neutral.

**Existence of an Alternative Forum**. FTI contends the District Court of the District of Columbia provides an alternative forum, supporting the conclusion that personal jurisdiction in this forum is unreasonable. It is not clear, however, whether that court provides an alternative forum given that Westerman has brought a motion to dismiss for lack of personal jurisdiction in the Washington D.C. case and that motion remains pending. Therefore, the Court finds that this factor slightly favors Westerman's position.

Considering all of the factors discussed above, the Court concludes that FTI has failed to make a compelling case that the exercise of personal jurisdiction over it is unreasonable. Therefore, the Court concludes, for the purposes of the Motion to Dismiss, that personal jurisdiction over FTI is proper on the basis of specific jurisdiction.

### D. Venue

#### 4. 28 U.S.C. § 1391

The parties' dispute about venue turns on whether venue is proper under 28 U.S.C. § 1391(b)(2). That section provides for venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]" FTI argues venue is not proper in this District because "the employment agreement at issue was negotiated, executed, and enforced from Washington, D.C." Motion at 24-25 (citing *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003)). The Court rejects FTI's argument.

To determine venue in cases involving contract disputes, courts in the Ninth Circuit "have 'looked to such factors as where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred.' " *Richmond Techs., Inc. v. Aumtech Bus. Solutions*, 2011 WL 2607158, at *10 (N.D. Cal., July 1, 2011) (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir. 1986). As discussed above, the 2019 Employment

1    Agreement in this case makes clear that Westerman's services were to be performed in California

2    as he was hired as a managing director based in FTI's San Francisco office.  That is sufficient to

3    establish that a substantial part of the events or omissions giving rise to Westerman's claims

4    occurred in this district.

5         FTI argues that *Richmond Technologies* is distinguishable because in that case, the

6    employment contract was negotiated and executed between a California resident and a California-

7    based company.  Reply at 17.  However, the court in *Richmond Technologies* considered

8    numerous factors in determining that venue in that case was proper under Section 1391(b)(2),

9    including the place of intended performance, explaining:

> If § 1391(a)(2) authorized venue in the single district in which the
> most substantial part of the events or omissions giving rise to the
> claim occurred, the Court would agree with Defendants that venue in
> the Northern District of California is improper. However, under the
> current version of § 1391(a)(2), the circuits appear to agree that venue
> may be proper in multiple districts if a "substantial part" of the
> underlying events took place in each of those districts. *See Gulf Ins.
> Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir.2005) (collecting cases
> from various federal courts of appeals). Thus, Plaintiff need not show
> that the Northern District of California has the most substantial
> relationship to the dispute, *Kirkpatrick v. Rays Group*, 71 F.Supp.2d
> 204, 213 (W.D.N.Y.1999), or that it is the "best" venue. *Silver Valley
> Partners, LLC v. De Motte*, 400 F.Supp.2d 1262, 1269
> (W.D.Wash.2005). Rather, "for venue to be proper, significant events
> or omissions material to the plaintiff's claim must have occurred in
> the district in question, even if other material events occurred
> elsewhere." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d at 357. Where, as
> here, a case involves a contract dispute, courts have "looked to such
> factors as where the contract was negotiated or executed, where it was
> to be performed, and where the alleged breach occurred" to determine
> whether venue is proper. *Id*. (quotation mark and citation omitted);
> *see also Shropshire v. Fred Rappoport Co*., 294 F.Supp.2d 1085,
> 1094 (N.D.Cal.2003) (finding venue proper in case turning on
> contract interpretation because contract was partially negotiated,
> signed, and substantially performed in the district).

23   2011 WL 2607158, at *10. The court in *Richmond Technologies* went on to conclude that venue

24   may be proper "in the place of intended performance" even if "the Defendants may have executed

25   and performed their contracts in other locations."  *Id.*  Thus, FTI's reading of *Richmond*

26   *Technologies* as limiting venue to the place where the contract was negotiated and executed – or

27   requiring that the parties to the contract must reside in the forum – is not consistent with the

28   reasoning of that case.

Likewise, the Court disagrees with FTI's assertion that *Jacobs v. Sustainability Partners LLC*, No. 20-CV-01981-PJH, 2020 WL 5593200, at *5 (N.D. Cal. Sept. 18, 2020), cited by Westerman in support of venue in this District, actually supports FTI's position.  In that case, the court applied the reasoning of *Richmond Technologies*, concluding that venue in the Northern District of California was proper, even though it was "not clear where the contract was negotiated or executed" because it was "reasonably clear that the intended place of performance of plaintiff's duties and responsibilities for [the defendant] was his home in the Northern District of California." 2020 WL 5593200, at *5. FTI seems to rely on this case for the proposition that for remote workers, the place of performance is where the worker resides and therefore, that the place of performance in this case is Wyoming rather than San Francisco.  But that reading of the case, again, ignores its underlying reasoning, as well as distinctions between the facts of that case and the facts here.  As both *Jacobs* and *Richmond Technologies* make clear, Section 13919(b)(2) allows for venue in more than one district and does not require that the *most* substantial part of the underlying events occur in the chosen forum.  Here, Westerman performed under the 2019 Employment Agreement not only from his home in Wyoming but also from his physical office in San Francisco, where he was specifically hired to work as a managing director and spent a significant number of work-days each year. That is enough to make venue in this District proper.

For these reasons, the Court DENIES FTI's Motion to Dismiss in its entirety

## IV.    DISCOVERY MOTION

### A.    Background

In its Discovery Motion, FTI seeks an order requiring that Westerman respond to ten requests for production and submit to a deposition before it is required to respond to Westerman's Preliminary Injunction Motion.  Discovery Motion  at 5. FTI argues that this discovery is necessary to test the statements in Westerman's declaration, dkt. no. 22-1, relating to three key issues in this case, namely, 1) whether Westerman was a California employee when he worked for FTI; 2) whether Westerman's current employer, Secretariat, is a  California-based employer; and 3) whether he will suffer irreparable harm if a preliminary injunction is not entered.

Westerman counters that the key issue that must be decided in connection with the

1    Preliminary Injunction Motion -- whether the non-compete provisions of the Employment

2    Agreement are void under Cal. Bus. & Prof. Code §§ 16600 because California has a materially

3    greater interest in this case than Maryland – can be decided on the basis of facts that are

4    undisputed, and therefore, that the expedited discovery FTI seeks is unnecessary.  Opposition at 2-

5    3 (citing *Application Group, Inc. v. Hunter Group, Inc*., 61 Cal. App. 4th 881, 888-889 (1998)).

6    He further contends FTI fails to demonstrate that there is good cause for expedited discovery

7    because: 1) it does not show that the requests for production are tailored to obtain discovery

8    necessary to the Court's determination of the Preliminary Injunction Motion and provides no

9    explanation of the purpose of the deposition of Westerman; 2) the requests for production are

10   overbroad; 3) the requests for production and a deposition will impose a significant burden on

11   Westerman; and 4)  "FTI misconstrues and overstates the relevance of its unnecessary discovery

12   on Mr. Westerman's pending preliminary injunction." *Id.*  at 4.

13       **B.    Legal Standards**

14        Rule 26(d) of the Federal Rules of Civil Procedure provides that "[a] party may not seek

15   discovery from any source before the parties have conferred as required by Rule 26(f), except ...

16   when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d). A party

17   must show good cause for early discovery. *Bungie, Inc. v. Thorpe*, No. 21CV05677EMCDMR,

18   2021 WL 5178825, at *3 (N.D. Cal. Nov. 8, 2021) (citation omitted).  "Good cause may be found

19   where the need for expedited discovery, in consideration of the administration of justice,

20   outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron Am., Inc*., 208

21   F.R.D. 273, 276 (N.D. Cal. 2002).

22        "The following factors are commonly considered by courts to determine whether there is

23   good cause for expedited discovery: '(1) whether a preliminary injunction is pending; (2) the

24   breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the

25   burden on the defendants to comply with the requests; and (5) how far in advance of the typical

26   discovery process the request was made.' " *Kayvan v. Pompeo*, No. 5:19-CV-08071-EJD, 2020

27   WL 553940, at *1 (N.D. Cal. Feb. 4, 2020) (quoting *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d

28   1063, 1067 (C.D. Cal. 2009)).

The parties agree that in determining what discovery (if any) is appropriate, the Court should look to *Application Grp., Inc. v. Hunter Grp., Inc*., in which the California Court of Appeal found "that California law may be applied to determine the enforceability of a covenant not to compete, in an employment agreement between an employee who is not a resident of California and an employer whose business is based outside of California, when a California-based employer seeks to recruit or hire the nonresident for employment in California." 61 Cal. App. 4th 881, 885 (1998).

### C.   Discussion

Applying the standards set forth above, and having considered the parties' briefs, the Court concludes that there is good cause for *some* of the early discovery that FTI seeks so that FTI can test the veracity of the Westerman Declaration, as set forth below.

**Deposition of Westerman**:  The Court GRANTS  FTI's request to depose Westerman before responding to the Preliminary Injunction Motion.  Because the Preliminary Injunction Motion relies on Westerman's declaration, FTI is entitled to test his assertions in a deposition. Therefore, FTI will be permitted to depose Westerman The parties should meet and confer as to appropriate time limits and scope of this deposition, which will not bar FTI from taking a further deposition, if warranted, during general discovery.

**Requests for Production.**

#### 1.  RFP #1

This RFP seeks " All DOCUMENTS PLAINTIFF relied on in preparing his declaration in support of the Motion for Preliminary Injunction." The Court finds that this request is aimed primarily at uncovering information that is likely to be subject to attorney-client privilege or is work product.  Therefore, the good cause requirement is not met as to this request.   The Discovery Motion is DENIED as to this request.

#### 2.  RFP #2

This RFP seeks "All DOCUMENTS and COMMUNICATIONS relating to harm allegedly suffered by PLAINTIFF in support of PLAINTIFF's Motion for Preliminary Injunction, including, without limitation, PLAINTIFF's ability or inability to perform work for SECRETARIAT."  This

United States District Court
Northern District of California

1  request is DENIED.  The harm Westerman alleges is apparent from the theory of his claims,

2  namely, the harm associated with being prohibited from working for Secretariat, and the evidence

3  of that harm is, primarily, the 2019 Employment Agreement.  Therefore, FTI has not demonstrated

4  that this discovery is necessary to decide the Preliminary Injunction Motion. The Discovery

5  Motion is DENIED as to this request.

6           **3.  RFP # 3**

7           This RFP seeks "All DOCUMENTS and COMMUNICATIONS relating to PLAINTIFF's

8  contact or attempted contact with former clients, former colleagues and other former business

9  associates with who [sic] he is attempting to develop business."  To the extent that this RFP is

10  aimed at Westerman's current efforts to obtain California (and non-California) clients, this

11  discovery may have some bearing on the Preliminary Injunction Motion, the primary focus of

12  which is whether Secretariat is a California employer.  However, the request is extremely broad

13  and therefore unnecessarily burdensome.   Therefore, the Discovery Motion is DENIED without

14  prejudice as to this request.  If the Court determines after the Preliminary Injunction Motion is

15  fully briefed that discovery on this issue is necessary to decide that motion, it will defer ruling on

16  the motion to allow the deposition and any associated supplemental briefing to occur.

17           **4.  RFP #4**

18           This RFP seeks "All DOCUMENTS and COMMUNICATIONS sufficient to identify

19  PLAINTIFF's plans to build SECRETARIAT's accounting and internal investigations practice

20  that PLAINTIFF contends will be harmed if PLAINTIFF's Motion for Preliminary Injunction is

21  not granted." The Court finds that this discovery is not necessary to decide the Preliminary

22  Injunction Motion as the primary harm Westerman alleges is evidenced by the  2019 Employment

23  Agreement.  Therefore, the Discovery Motion is DENIED as to this request. If the Court

24  determines after the Preliminary Injunction Motion is fully briefed that discovery on this issue is

25  necessary to decide that motion, it will defer ruling on the motion to allow the deposition and any

26  associated supplemental briefing to occur.

27           **5.  RFP #5**

28           This RFP seeks "All DOCUMENTS and COMMUNICATIONS sufficient to identify

*United States District Court*
*Northern District of California*

33

Plaintiff's work with California clients and companies and non-California clients and companies for SECRETARIAT, including, without limitation, actual location where Plaintiff performed said work and hours worked for each client or company." As this discovery is directly related to the question of whether Secretariat is a California-based employer, the Court finds that there is good cause as to this request. The Discovery Motion is GRANTED as to this request.

### 6.  RFP #6

This RFP seeks "All DOCUMENTS relating to PLAINTIFF's residency from October 2019 to the present, including travel records, calendars, credit card statements, cell phone records (sufficient to identify where his cell phone is being used), voter registration, insurance, homestead registrations, and address of his spouse's employer." The Court denies this request, which is overly burdensome and unnecessary as Westerman does not dispute that he moved to Wyoming in 2016 and has lived there ever since.  The Discovery Motion is DENIED as to this request.

### 7.  RFP #7

This RFP seeks "All DOCUMENTS and COMMUNICATIONS relating to PLAINTIFF's job placement at SECRETARIAT, including, without limitation, recruitment, job application, interview(s), compensation, and correspondence and contact with SECRETARIAT prior to the start of his employment with SECRETARIAT." This discovery is directly relevant to the Preliminary Injunction Motion and does not impose an excessive burden on Westerman. Therefore, the Court finds that there is good cause for permitting this discovery.  The Discovery Motion is GRANTED as to this request.

### 8.  RFP #8

This request seeks "All DOCUMENTS and COMMUNICATIONS relating to PLAINTIFF's employment contract and negotiation of same with SECRETARIAT, including, without limitation, PLAINTIFF's office location, affiliation with SECRETARIAT's San Francisco office, job description, responsibilities, and duties at SECRETARIAT."  This discovery is directly relevant to the Preliminary Injunction Motion and does not impose an excessive burden on Westerman.  Therefore, the Court finds that there is good cause for permitting this discovery.  The Discovery Motion is GRANTED at to this request.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 9.  RFP #9

This request seeks "All DOCUMENTS and COMMUNICATIONS relating to and/or evidencing the actual work locations of PLAINTIFF's direct reports, managers, and supervisors at SECRETARIAT."  The request is overbroad to the extent it seeks "all" documents on this issue; however, the work locations of Westerman's managers and supervisors is directly relevant to the Preliminary Injunction Motion.  Therefore, the Court limits this request to documents sufficient to show the actual work locations of PLAINTIFF's direct reports, managers, and supervisors at Secretariat.  As limited, the Discovery Motion is GRANTED as to this request.

### 10. RFP #10

This request seeks "ALL DOCUMENTS and COMMUNICATIONS between PLAINTIFF and SECRETARIAT relating to PLAINTIFF's FTI employment agreement." This discovery is directly relevant to the Preliminary Injunction Motion and does not impose an excessive burden on Westerman.  Therefore, the Court finds that there is good cause for permitting this discovery.  The Discovery Motion is GRANTED at to this request.

### D.    CONCLUSION

The parties should meet and confer to determine whether any documents should be produced on an attorneys' eyes only basis and to negotiate a stipulated protective order.  A stipulated protective order and a stipulation addressing the scope and timing of the Westerman deposition, as well as any other agreements the parties reach as to the terms of Westerman's production of documents consistent with this Order, shall be submitted by **October 3, 2024**.

**IT IS SO ORDERED.**

Dated:  September 25, 2024

JOSEPH C. SPERO
United States Magistrate Judge